UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

CHADWICK J. ST. LOUIS,          :
    Petitioner,                 :
                                :               PRISONER
    v.                          :      Case No. 3:12cv356 (DJS)
                                :
MR. ERFE, ET. AL.,              :
    Respondents.                :

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Chadwick J. St. Louis, an inmate currently confined at MacDougall-Walker Correctional Institution in Suffield, Connecticut, brings this action *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges his 2009 Connecticut conviction for murder.  For the reasons that follow, the petition is denied.

## I.  Standard of Review

The federal court will entertain a petition for a writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws.  28 U.S.C. § 2254(a).  A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and internal quotation marks omitted).   A federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits in state court unless the adjudication of the claim in state court either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   That standard is "difficult to meet." *Metrish v. Lancaster*, ___ U.S. ___, 133 S. Ct. 1781, 1786 (2013)(internal quotation marks omitted).

Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision.   *See Howes v. Fields*, ___ U.S. ___, 132 S. Ct. 1181, 1187 (2012); *Carey v. Musladin*, 549 U.S. 70, 74 (2006).   Thus, "[c]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" *Parker v. Matthews*, ___ U.S. ___, 132 S. Ct. 2148, 2155 (2012) (quoting 28 U.S.C. § 2254(d)(1)).   The clearly established federal law may be a generalized standard or a bright-line rule intended to apply

in a particular context.  *See Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts.  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case, or refuses to extend a legal principle clearly established by the Supreme Court to circumstances intended to be governed by the principle.  *See Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008).  It is not enough that the state court decision is incorrect or erroneous.  Rather, the state court application of clearly established law must be objectively unreasonable, which is a substantially higher standard.  *See Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  Thus, a state prisoner must show that the challenged court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."   *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (standard for evaluating state-court rulings where constitutional claims have been considered on the merits is highly deferential and difficult for petitioner to meet). In addition, the federal court's review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *See Id.*

## II.  **Procedural History**

In August 2007, police officers arrested the petitioner in connection with the murder of Christopher Petrozza. *See State v. St. Louis*, 128 Conn. App. 703, 709 (2011). On August 22, 2007, the State's Attorney filed an information charging the petitioner with one count of murder in violation of Connecticut General Statutes § 53a-54a. *See* Resp'ts' Mem. Opp'n Pet. Writ Habeas Corpus, App. B at 3. On March 2, 2009, the State's Attorney filed a long form information charging the petitioner with one count of murder in violation of Connecticut General Statutes § 53a-54a and one count of tampering with evidence in violation of Connecticut General Statutes § 53a-155(a)(2). *See id.* at 12.

On March 3, 2009, at the plea hearing, a judge canvassed the

-4-

petitioner on his election to waive his right to a jury trial and instead to be tried by a three-judge panel. *See id.* App. G, Plea Hr'g, at 1-29, Mar. 3, 2009.  On March 10, 2009, the State's Attorney filed a new information charging the petitioner with one count of murder in violation of Connecticut General Statutes § 53a-54a. *See id.* App. B, at 13.  The petitioner pleaded not guilty and elected to be tried by a three-judge panel. *See id.* App. G, Pre-trial Hr'g, at 1-8, Mar. 10, 2009.

Presentation of evidence began on March 11, 2009. *See id.* App. G, Trial Tr., at 24, Mar. 11, 2009.  On March 17, 2009, the three-judge panel found the petitioner guilty of murder. *See id.* App. G, Trial Tr., at 46, Mar. 17, 2009.  On May 27, 2009, the panel of judges sentenced the petitioner to a total effective sentence of fifty years of imprisonment. *See id.* App. G, Sentencing Tr., at 45, May 27, 2009.

The petitioner appealed his conviction on six grounds.  He claimed that the three-judge panel erred in denying: (1) his motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978)[1]; (2) his motion to dismiss on the grounds that the arrest

---

[1] "Under *Franks v. Delaware*, . . . a defendant is entitled to a hearing to test the veracity of an affiant's statements in a warrant application if he makes a substantial preliminary showing that [i] a deliberate falsehood or statement made with reckless disregard for the truth was included in the warrant affidavit and [ii] the statement was necessary to the judge's finding of probable cause." *United States v. Filippi*, 622 F. App'x 25 (2d Cir. 2015) (internal quotation marks omitted).

and search warrants were not supported by probable cause and the police failed to properly execute the search warrant; (3) his motion to suppress statements that he gave to police without having received the warnings required under *Miranda v. Arizona*, 384 U.S. 436 (1966); (4) his motion to suppress physical evidence that had been seized pursuant to an unlawful search warrant; (5) his motion for acquittal on the ground that the State of Connecticut failed to prove beyond a reasonable doubt the exact time or location of the offense or his intent to commit murder; and (6) his motion for a new trial. *See St. Louis*, 128 Conn. App. at 705-06. On May 17, 2011, the Connecticut Appellate Court affirmed the judgment of the trial court. *See id.* at 730. On October 26, 2011, the Connecticut Supreme Court denied the defendant St. Louis' petition for certification to appeal the decision of the Appellate Court. *See State v. St. Louis*, 302 Conn. 945 (2011).

In April 2010, the petitioner filed a petition for a writ of habeas corpus in the Connecticut Superior Court for the Judicial District of Tolland at Rockville challenging his conviction on various grounds. *See* Pet. Writ Habeas Corpus at 5; *St. Louis v. Warden*, TSR-CV10-4003535-S (Conn. Super. Ct. Apr. 26, 2010). He filed a second state habeas petition in November 2012. *See St. Louis v. Warden*, TSR-CV13-4005120-S (Conn. Super. Ct. Nov. 1,

-6-

2012).[2]   A judge subsequently consolidated the second habeas case
with the first habeas case.  *See St. Louis v.* Warden, TSR-CV13-
4005120-S, Dkt. Entry 104.00 (Conn. Super. Ct. Jan. 15, 2013).
On August 4, 2014, after a hearing, the court denied the amended
habeas petition filed in the consolidated actions.  *See St. Louis
v. Warden,* No. TSRCV104003535, 2014 Conn. Super. LEXIS 1918, at
*14 (Conn. Super. Ct. Aug. 4, 2014).

     The petitioner appealed the denial of the habeas petition.
*See St. Louis v. Comm'r of Correction*, 161 Conn. App. 358 (2015).
On November 17, 2015, the Connecticut Appellate Court dismissed
the appeal.  *See id.* at 367.

     The petitioner filed the present federal petition in March
2012. All claims raised in this petition were previously raised
on direct appeal.  The respondents have filed a memorandum in
opposition to the petition.

## III. **Factual Background**

     The Connecticut Appellate Court determined that the
following facts and procedural history were relevant to the
petitioner's appeal:

          Christopher Petrozza worked for the
          defendant[3] in his landscaping business.
          Petrozza and the defendant also socialized

---

     [2] Information regarding this case may be found at:
**http://www.jud.ct.gov/jud2.htm** under Civil/Family/Housing Case
Look-up and Docket Number Search using TSR-CV13-4005120-S.  (Last
visited on April 11, 2016).

[3]The "defendant" in the appeal was St. Louis.

together outside of the workplace, and the
defendant became financially indebted to
Petrozza.

On September 14, 2006, Petrozza purchased a
1998 Audi for $5789 in cash. After purchasing
the vehicle, Petrozza was short on funds and
on September 29, 2006, Petrozza's mother,
with whom he resided, advised him to collect
the money that was owed to him by the
defendant. On this date, Petrozza went to the
defendant's home in Manchester. While
Petrozza was at the defendant's home, the
defendant intentionally caused Petrozza's
death by striking him with a skid-steer
loader, commonly known as a "Bobcat." After
killing Petrozza, the defendant took
Petrozza's driver's license and buried
Petrozza's body in the rear yard of his
residence, covering the grave with large
ornamental rocks.

After killing Petrozza, the defendant broke
into a vehicle parked at his daughter's day
care center and took a purse that contained a
checkbook. The defendant went to a credit
union and attempted to use Petrozza's license
to cash a check from the stolen checkbook
that he had forged and made payable to
Petrozza.

On February 19, 2007, the Manchester police
arrested the defendant on charges unrelated
to the disappearance of Petrozza. The
defendant indicated during the booking
process that he had information relevant to
the individual who was responsible for recent
car breakins. Several days later, the
defendant told the police that Petrozza was
responsible for the burglaries. In response,
the police prepared a warrant for the arrest
of Petrozza.

At his own initiative, the defendant
continued to communicate with the Manchester
police, the state police and the office of
the state's attorney while he was
incarcerated. Despite having provided police
with information about criminal activity

-8-

perpetrated by third parties, the defendant was not offered a reduced sentence for the crimes related to his February 19, 2007 arrest. The defendant then began to tell the police about the existence of a dead body in an effort to receive leniency for the February 19, 2007 arrest. After he met with the Manchester police several times, on June 5, 2007, the defendant admitted to having caused the death of Petrozza and described the circumstances of Petrozza's death as an "accident." On June 19, 2007, the police recovered Petrozza's body from the yard of the defendant's residence.

The defendant was charged with one count of murder and on March 3, 2009, elected to be tried by a panel of three judges. On May 27, 2009, the defendant was convicted and sentenced to fifty years imprisonment.

*State v. St. Louis,* 128 Conn. App. 703, 706-08 (2011) (footnote omitted).

## IV.  <u>Discussion</u>

The petitioner asserts four of six grounds that he raised on direct appeal of his conviction.  He argues that the three-judge panel improperly denied: (1) his motion to suppress statements that he gave to police without having received *Miranda* warnings; (2) his motion for acquittal on the ground that the State of Connecticut failed to prove beyond a reasonable doubt the exact time or location of the offense or his intent to kill the victim; (3) his motion to dismiss on the ground that the arrest and search warrants were not supported by probable cause; and (4) his motion for a new trial.

A.   **Suppression of Statements Made to Police**

Prior to trial, the petitioner moved to suppress statements that he made to Manchester police officers and other law enforcement officials on various dates from February to June 2007, prior to his arrest in connection with the death of Christopher Petrozza, on the ground that the officers violated his rights under the United States Supreme Court's decision in *Miranda*.  The three-judge panel denied both his oral and written motions to suppress statements.

The petitioner challenges the findings of the three-judge panel with regard to his alleged waiver of his right to have counsel present during statements to law enforcement officials on June 4, 2007.  The petitioner contends that he clearly invoked his right to counsel, that the first law enforcement official stopped questioning him at that time, but that another official continued to question him without re-advising him of his rights or arranging for him to secure the assistance or presence of counsel.  The petitioner argues that this conduct violated his Fifth and Sixth Amendment rights to have counsel present at a custodial interrogation as required by *Miranda v. Arizona*.

The Connecticut Appellate Court concluded that the following additional facts and procedural history were relevant to its consideration of the petitioner's *Miranda* claim:

> The defendant made an oral motion to suppress
> statements he made to the police from

February 19 to May 25, 2007. On March 11, 2008, he filed a motion to suppress statements he made to the police on June 1, 2007, and from June 4 to 7, 2007.  The court heard testimony from Jeffrey Lampson, a detective for the Manchester police, Richard Grimaldi, an officer with the Manchester police, and Richard Cousins and Stephen Kumnick, both inspectors from the office of the Hartford state's attorney, concerning these motions.

On February 19, 2007, the defendant was arrested on charges unrelated to this appeal. Grimaldi read the defendant his *Miranda* rights. Then Lampson, as was his standard practice, asked the defendant if he had any knowledge or information regarding any recent crimes in order to assist the defendant with his pending charges. On February 22, 2007, at the defendant's request, Lampson met with the defendant, who provided him with information concerning two thefts from motor vehicles that had occurred and identified Petrozza as the offender. Lampson did not consider the defendant a suspect in any additional crimes at this point and did not advise the defendant of his rights under *Miranda*.

On March 30, April 12 and May 25, 2007, Lampson met with the defendant again, each time at the defendant's request. Lampson did not provide the defendant with *Miranda* warnings at any of these meetings. During these meetings, the defendant provided Lampson with information concerning the motor vehicle break-ins and Petrozza's alleged role in the offenses. The defendant also told Lampson that Petrozza had contacted him while he was incarcerated and that he had been using an alias supported by a stolen driver's license. During the May 25, 2007 meeting, the defendant first told Lampson that he was being represented by his attorney, Brian Woolf, for the pending charges.

On May 31, 2007, Cousins called the defendant to speak to him about his status as a victim in another unrelated case. During the

conversation, the defendant asked Cousins if he had received a letter the defendant sent to him and to a prosecutor. Cousins said that he had not seen the letter but later went to the mail room and retrieved the letter. On June 1, 2007, Lampson received a telephone call from Kumnick. Kumnick told Lampson that he recently received a letter from the defendant in which he indicated that he knew the whereabouts of a body. Lampson met with the defendant that day and did not provide him with any *Miranda* warnings, and the defendant indicated that he was aware of the location of a buried female body. Although Lampson was aware on this date that Petrozza was missing, the defendant still was not considered a suspect in Petrozza's disappearance.

On June 4, 2007, the defendant met with Cousins, Lampson and Kumnick at the office of the Hartford state's attorney. He was advised of his rights under *Miranda*, waived his rights and specifically told the police that he did not want Woolf present at the meeting. On this date, Lampson considered the defendant a suspect in the disappearance of Petrozza. The defendant requested to speak with Kumnick alone and indicated that he wanted guarantees relevant to his pending cases before he would provide further information, and he also requested that a public defender make the agreement on his behalf. Cousins responded that he was not in a position to respond to the defendant's demands. No guarantees were given at this time.

In a written statement to the police on June 5, 2007, the defendant, after being advised of his rights under *Miranda*, admitted to causing the death of Petrozza and described the circumstances of Petrozza's death as an "accident." On June 6, 2007, the defendant asked Kumnick to contact Woolf, and Kumnick advised the defendant to put his request in writing and assured the defendant that the correspondence would be forwarded to counsel.

-12-

*St. Louis*, 128 Conn. App. at 721-24 (footnotes omitted).

### 1. Fifth Amendment Claim

The Fifth Amendment to the United States Constitution provides in relevant part: "No person shall be ... compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law...." U.S. Const. amend. V. It is applicable to state criminal proceedings by virtue of the Fourteenth Amendment. *See Malloy v. Hogan*, 378 U.S. 1, 6 (1964). In *Miranda*, 384 U.S. at 444, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." The Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* The Court stated that prior to questioning an individual during a custodial interrogation, law enforcement officers must inform the individual:

> that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* at 479.

When an individual knowingly and voluntarily waives his *Miranda* rights, "law enforcement officials may continue questioning until and unless the suspect clearly requests an attorney." *Davis v. United States*, 512 U.S. 452, 461 (1994). If, after a police officer makes the individual aware of his or her *Miranda* rights, the individual requests the assistance of an attorney, the officer must stop the interrogation until an attorney is made available or until the individual reinitiates the conversation or interview with the officer. *See Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). A reference by a suspect "to an attorney that is ambiguous or equivocal, [such] that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking a right to counsel," does not require an officer to stop questioning the suspect. *Davis*, 512 U.S. at 459 (emphasis in original).

In its review of this claim, the Connecticut Appellate Court applied the United States Supreme Court's holding in *Miranda* and also applied state cases with holdings that mirror other applicable Supreme Court law. *See St. Louis*, 128 Conn. App. at 724-28. Because the Connecticut Appellate Court applied the correct legal principles and Supreme Court case law, the decision is not contrary to clearly established federal law. *See Early v.* Packer, 537 U.S. 3, 8 (2002) (holding that state court need not be aware of nor cite relevant Supreme Court cases as

-14-

long as the reasoning and decision do not contradict those cases).  Thus, the court considers whether the analysis of the Connecticut Appellate Court was an unreasonable application of federal law.

At the suppression hearing, in connection with the claim pertaining to the interrogation of the petitioner on June 4, 2007, counsel for the petitioner presented the testimony of Jeffrey Lampson, a Detective employed by the Manchester Police Department; Richard Cousins, an Inspector in the State's Attorney's Office for the Judicial District of Hartford; and Stephen Kumnick, an Inspector in the State's Attorney's Office for the Judicial District of Hartford.  *See* Resp'ts' Mem. Opp'n Pet. Writ Habeas Corpus, App. G, Trial Tr., at 85-109, 134-83, Mar. 11, 2009; Trial Tr. 5-49, Mar. 12, 2009.  The petitioner chose not to testify at the suppression hearing.  *See* App. G, Trial Tr. 50-53, Mar. 12, 2009.

The testimony of Inspector Cousins reflected that on June 4, 2007, he, Inspector Kumnick, Detective Lampson and the petitioner met in Hartford at the request of the petitioner.  *See id.*, Trial Tr., at 9-14, Mar. 12, 2009.  At some point after Inspector Cousins brought the petitioner up to a conference room, the petitioner asked to speak to Inspector Cousins alone.  *See id.* at 15.  Once Detective Lampson and Inspector Kumnick left the room, Inspector Cousins orally read the petitioner his *Miranda* rights.

*See id.* at 16-19.  After the petitioner "said that he knew exactly what they [his *Miranda* rights] meant," he stated that he did not want an attorney.  *See id.* at 17.

The petitioner began to speak to Inspector Cousins about his knowledge of the whereabouts of a dead body.  *See id.* at 19.  At some point, the petitioner provided Inspector Cousins with a hand-written statement dated June 3, 2007, that included his demands regarding the disposition of other criminal charges that had been filed against him in return for providing more specific information about the dead body.  *See id.* at 20-21, 26-27.  Part of the demands included a request "to speak to a public defender to make this agreement on his behalf."  *See id.* at 28.  In response to this list of demands, Inspector Cousins asked the petitioner if he wanted an attorney, or the attorney who currently represented him in another criminal matter, to be present.  *See id.* at 27-28.  The petitioner said no and added that the wanted to fire his attorney.  *See id.* at 28.

Inspector Cousins did not continue to question the petitioner and there was no further discussion about a body or anything else.  *See id.* at 29.  There were no guarantees or promises made to the petitioner in Inspector Cousins' presence.  *See id.* at 25.

The petitioner then signed and initialed a written advisement of *Miranda* rights form.  *See id*. at 22-23.  Inspector

-16-

Cousins and Detective Lampson signed the form as witnesses.  *See id.* at 23.  The form was dated June 4, 2007 at 11:40 a.m.  *See id.* at 24.  Inspector Cousins read the rights on the form to the petitioner and the petitioner indicated that he understood the rights and was waiving his rights, including his right to have counsel present.  *See id.* at 22-23.

Detective Lampson testified that he interviewed the petitioner on June 4, 2007, after the petitioner had been advised of his rights.  *See id.*, Trial Tr., at 144-47, Mar. 11, 2009. Detective Lampson stated that at the conclusion of his interview with the petitioner, the petitioner repeatedly asserted that he would not provide any additional details regarding the body without guarantees from the State's Attorney's Office.  *See id.* at 149.

The Connecticut Appellate Court determined that the three-judge panel had correctly concluded that: (1) the petitioner had not become a suspect who was subject to interrogation until June 4, 2007, (2) the police provided him with the appropriate *Miranda* warnings prior to his conversations with them from that date forward, and (3) the petitioner had waived his rights.  *See St. Louis*, 128 Conn. App. at 726-27.  The Appellate Court observed that despite the petitioner's references to his attorney in other criminal matters and to a public defender, he did not unequivocally or unambiguously invoke his right to counsel during

-17-

the interviews with police.  *See id.*  In addition, the record
supported the trial court's conclusion that the police ceased
questioning the petitioner after he made references to counsel.
*See id.*

During his interview with Inspector Cousins on June 4, 2007,
the petitioner offered a written statement indicating his desire
for a public defender. Inspector Cousins did not immediately make
an effort to arrange to have an attorney present for the
petitioner, because the written statement that included the
reference to a public defender was dated the day before the
interview.  *See* Resp'ts' Mem. Opp'n Pet. Writ Habeas Corpus, App.
G, Trial Tr. 27-28, Mar. 12, 2009.  Instead, Inspector Cousins
questioned the petitioner as to whether he wanted an attorney - -
either a new attorney or the attorney who represented him in
another criminal matter - - and the petitioner declined the
assistance of an attorney.  *See id.*  Further testimony from
Inspector Cousins reflects that the petitioner subsequently
signed a written advisement of rights form and waived his right
to an attorney.  *See id.* at 22-23.

Detective Lampson testified that he interviewed the
petitioner after the petitioner had been advised of his rights.
See App. G, Trial Tr., at 144-47, Mar. 11, 2009.  Although
petitioner's counsel raised the issue of what had transpired
before the written advisement of rights was signed by the
petitioner on June 4, 2007, he did not elicit testimony from

-18-

Detective Lampson regarding the specific timing of his interview with the petitioner.  Nor was it made clear whether the interview of the petitioner by Detective Lampson was conducted after the oral advisement of *Miranda* rights by Inspector Cousins or the written advisement of rights by Inspector Cousins that Detective Lampson witnessed.

In light of the testimony and evidence before it, the three-judge panel was not unreasonable in concluding "that on June 4th, June 5th and June 6th, 2007, the defendant had been duly advised of *Miranda* rights, that he acknowledged that he understood his rights and did execute a knowing, intelligent and voluntary waiver of those rights." *Id.* at 16, Mar. 17, 2009.  Given the record as developed by the petitioner before the state courts, this court cannot conclude that it was objectively unreasonable under clearly established Supreme Court precedent for the Connecticut Appellate Court to hold that the three-judge panel had properly denied the motion to suppress petitioner's statements to police on June 4, 2007, because the police had not violated the petitioner's rights under *Miranda, Edwards* or *Davis* when the statements were given*.*  Thus, the Fifth Amendment claim set forth in ground one must be denied because the Appellate Court's conclusion was not contrary to or an unreasonable application of federal law or based on an unreasonable determination of the facts.

2. **Sixth Amendment Claim**

The petitioner also argues that the use at trial of statements he made to police violated his Sixth Amendment rights. The Connecticut Appellate Court noted that the right to counsel under the Sixth Amendment was "offense-specific" and only attached "at or after the initiation of adversary judicial criminal proceedings - - whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *St. Louis*, 128 Conn. App. at 727, n.15 (internal quotation marks omitted). Because formal judicial proceedings with regard to the death of Christopher Petrozza had not commenced as of June 4, 2007, the petitioner's interrogation by the police did not violate his Sixth Amendment rights.

The Connecticut Appellate Court's conclusion that the Sixth Amendment did not apply to statements elicited from the petitioner prior to the initiation of adversary judicial proceedings was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. *See Davis*, 512 U.S. at 456-57. ("Sixth Amendment right to counsel attaches only at the initiation of adversary criminal proceedings"). Accordingly, the petition for writ of habeas corpus is denied with regard to the Sixth Amendment claim.

B. **Insufficient Evidence**

The petitioner argues that the three-judge panel improperly

-20-

denied his oral and written motions for judgment of acquittal on the ground that the State of Connecticut had not proved when and where the murder had occurred.[4]  In addition, he argues that there was insufficient evidence to support a determination that he intended to cause the death of the victim.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  Federal courts, however, do not re-litigate state trials and make independent determinations of guilt or innocence.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  When a petitioner challenges the sufficiency of the evidence used to convict him, the court must "view[] the evidence in the light most favorable to the prosecution" and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)(emphasis in original).  In discussing this standard, the Supreme Court has emphasized "the deference owed the trier of fact and, correspondingly, the sharply limited nature of

---

[4]The petitioner also asserts that the three-judge panel erred in denying his motion to dismiss. The motion to dismiss, however, was addressed to the sufficiency of the arrest and search warrant affidavits. *See* Resp'ts' Mem. Opp'n Pet. Writ Habeas Corpus, App. B at 19-31. The petitioner challenges the panel's denial of the motion to dismiss in ground three of this petition. Thus, the court construes the second ground for relief as only a challenge to the trial court's denial of the motions to acquit.

constitutional sufficiency [of the evidence] review." *Wright v. West*, 505 U.S. 277, 296 (1992).

In its review of this claim, the Connecticut Appellate Court applied state case law that mirrors the applicable federal law. *See St. Louis*, 128 Conn. App. at 729. Because the Connecticut Appellate Court applied the correct legal principles, the decision is not contrary to clearly established federal law. *See Early*, 537 U.S. at 8 (state court need not be aware of nor cite relevant Supreme Court cases as long as the reasoning and decision do not contradict those cases). Thus, the court considers whether the analysis of the Connecticut Appellate Court was an unreasonable application of federal law.

The Connecticut Appellate Court first examined the elements of the crime of murder as defined by Connecticut General Statutes § 53a-54a and concluded that the prosecution was required to prove that the petitioner "'with intent to cause the death of another person . . . cause[d] the death of such person.'" *St. Louis*, 128 Conn. App. at 729 (quoting Conn. Gen. Stat. § 53a-54a). The court noted that neither the time nor the location of a killing is an element of § 53a-54a and concluded that the State of Connecticut was not required to prove exactly where or when victim's death occurred in order to convict the petitioner of murder under that statute. *See id.*

It is well-established that in reviewing a habeas petition

-22-

challenging a state conviction, a federal court may only grant relief if the petitioner is "'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). Thus, federal habeas corpus relief is not available to remedy a violation of state law. *See id.* ("it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts")(emphasis in original)

To the extent that the petitioner challenges the three-judge panel's denial of the motion for acquittal based on the panel's interpretation of a state statute, such a claim is not cognizable, because the petitioner is requesting federal review of an alleged violation of state law. *See Estelle*, 502 U.S. at 67-68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). The petition for a writ of habeas corpus is denied as to the challenge to the three-judge panel's denial of the motion for acquittal on the ground that the panel misinterpreted state law with regard to the elements of the offense of murder.

The petitioner further contends that the location of the murder was an essential element of the offense because it formed the basis of the court's jurisdiction. Under Connecticut law, it is well-established that the prosecutor has the burden of proving that a murder charged in an information was committed within

Connecticut's borders. *See State v. Gojcaj*, 151 Conn. App. 183, 190-91 (2014)("Consistent with the general rule that our courts will punish only offenses committed within the territory of our state, the state must prove that the killing charged in the information occurred within the territorial borders of Connecticut."); *see also* Conn. Gen. Stat. 51-1a(b)("The territorial jurisdiction of the Supreme Court, the Appellate Court, and the Superior Court shall be coextensive with the boundaries of the state.")

The Connecticut Appellate Court found the petitioner's jurisdictional challenge to be without merit given that the amended information specifically charged the petitioner with the offense of murder "in or near the town of Manchester, [Connecticut.]" *St. Louis*, 128 Conn. App. at 729 (internal quotation marks omitted). In addition, the Appellate Court noted the three-judge panel's conclusion that sufficient evidence had been presented at trial to establish that the murder took place at the petitioner's residence in Manchester, Connecticut.[5] *See*

[5]The petitioner also challenges the jurisdiction or venue of the three-judge panel under the Sixth Amendment, invoking his "right to a . . . jury of the . . . district wherein the crime shall have been committed, which district shall have previously been ascertained by law. . . ." U.S. Const. amend. VI [the "vicinage clause"]. This claim appears to have been raised for the first time in the petition for certification to the Connecticut Supreme Court seeking appeal of the decision of the Connecticut Appellate Court. *See* Resp'ts' Mem. Opp'n Pet. Writ Habeas Corpus, App. F, at 9. Thus, it was not properly exhausted. Even if it had been properly exhausted, the Second Circuit has noted that the United States Supreme Court has not decided whether the vicinage clause of the Sixth Amendment applies to the states. *See Carvajal v.*

*id.* at 729-30; Resp'ts' Mem. Opp'n Pet. Writ Habeas Corpus, App. G, Sentencing Tr., at 6, May 27, 2009.  The Connecticut Appellate Court's conclusion with regard to the trial court's jurisdiction over the petitioner's criminal prosecution was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts.  The petition for writ of habeas corpus is denied as to the jurisdictional claim.

With regard to the proof of the elements of the murder charge, the Appellate Court concluded "that there was sufficient evidence presented at trial to sustain the defendant's conviction [of murder] . . . ." *St. Louis*, 128 Conn. App. at 730. At trial, the three-judge panel articulated its finding that on September 29, 2006, "the defendant intentionally caused the death of Petrozza by means of multiple blunt-force trauma." Resp'ts' Mem. Opp'n Pet. Writ Habeas Corpus, App. G, Sentencing Tr., at 6, May 27, 2009. The panel considered all of the evidence presented at trial and concluded that the State of Connecticut had proved beyond a reasonable doubt that the petitioner had intentionally caused the death of the victim.  *See id.* at 13-14.

Viewing the evidence presented to the three-judge panel in the light most favorable to the prosecution, keeping in mind that the panel was entitled to believe the testimony of the police

---

*Artus*, 633 F.3d 95, 110 (2d Cir. 2011). Thus, the state court determination that Manchester, Connecticut was the proper venue for the petitioner's trial was not an unreasonable application of Supreme Court law.

officers and the petitioner's cellmate and to draw inferences from all the evidence to find the requisite specific intent of the petitioner to kill the victim, the Connecticut Appellate Court's conclusion that the panel had determined that there was sufficient evidence to satisfy the state's burden of proof as to all elements of the offense of murder was not an unreasonable application of established federal law or based upon an unreasonable determination of the facts. Consequently, the petition for a writ of habeas corpus is denied as to this claim.

## C. Fourth Amendment Violations

The petitioner's third claim challenges the sufficiency of the affidavits submitted in support of the warrants used by the police to arrest him and search his property. His fourth claim challenges the three-judge panel's denial of his motion for a new trial. The basis for his claim that the trial court erred in denying his motion for a new trial is the alleged improper denial of his motions to dismiss, to suppress, and for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The respondent argues that the third and fourth grounds for relief assert violations of the Fourth Amendment and are consequently barred from federal habeas review.

In *Stone v. Powell*, 428 U.S. 465, 482 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted

federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *See also Wallace v. Kato*, 549 U.S. 384, 395 n.5 (2007) (reaffirming that *Stone v. Powell* precludes federal habeas review of Fourth Amendment claims unless the state fails to provide an opportunity for full and fair litigation of such claims).  In *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983), the Supreme Court extended the holding in *Powell* to preclude a Fourth Amendment challenge to the introduction into evidence of a confession made after an allegedly unlawful arrest.

Pursuant to *Powell*, the state is only required to provide a criminal defendant with an *opportunity* to fully and fairly litigate his Fourth Amendment claims. The Second Circuit has developed a test to determine when a state prisoner has been denied an opportunity for full and fair litigation of his Fourth Amendment claims. Under this test, a federal court may undertake habeas review of Fourth Amendment claims in only one of two situations: (1) "if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations" or (2) "if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). Whether a petitioner took advantage of an available

opportunity to litigate his Fourth Amendment claims is irrelevant in determining whether federal habeas review of those claims is barred.  *See Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002).

Prior to trial, the petitioner filed a motion seeking suppression of his written and oral statements to the police as well as items seized pursuant to the search warrant, a motion for a *Franks* hearing addressed to the search warrant, and a motion to dismiss the information challenging the sufficiency of the affidavits in support of the arrest and search warrants as well as the execution of those warrants.  The trial court held hearings on these motions and then denied them.  *See* Resp'ts' Mem. Opp'n Pet. Writ Habeas Corpus, App. G.  The petitioner appealed the rulings of the trial court to the Connecticut Appellate Court.  *See St. Louis*, 128 Conn. App. at 705-06.  The Appellate Court upheld the rulings of the three-judge panel.  *See id* at 706.

There is no evidence to suggest that the State of Connecticut did not afford the petitioner a full and fair opportunity to litigate his Fourth Amendment claims. The fact that the petitioner chose not to testify at the hearings before the trial court does not make the state process unavailable or inadequate.  Furthermore, his disagreement with the state court's rulings "is not the equivalent of an unconscionable breakdown in

the state's corrective process." *Capellan*, 975 F.2d at 72; *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977) (en banc) ("*Stone v. Powell* ... holds that we have no authority to review the state record and grant the writ simply because we disagree with the result reached by the state courts."). The petitioner has not met either of the exceptions to permit the court to review his Fourth Amendment claims. The court concludes that federal review of petitioner's Fourth Amendment claims as asserted in the third and fourth grounds of the petition is barred by the Supreme Court's decision in *Stone*.

**D. Motion for a New Trial**

In connection with his claim that the trial court improperly denied his motion for a new trial, the petitioner not only asserts challenges to the trial court's rulings on various Fourth Amendment motions, but also contends that the denial of that motion violated his right to a fair trial. The petitioner does not otherwise elaborate on his right to a fair trial claim.

The three-judge panel denied the petitioner's motion for a new trial because it held that it had properly denied the motions to suppress petitioner's pre-arrest statements, to suppress evidence recovered pursuant to the search warrant, to dismiss on the basis of improper warrants, and for a *Franks* hearing. *See* Resp'ts' Mem. Opp'n Pet. Writ Habeas Corpus, App. G, Sentencing Tr., at 5, May 27, 2009. On direct appeal, the petitioner argued

that the trial court had abused its discretion in denying the motion for a new trial. The Connecticut Appellate Court reviewed that claim and determined that the trial court had not erred in denying the motions to suppress, to dismiss, and for a *Franks* hearing. *See St. Louis*, 128 Conn. App. at 730. Thus, the Appellate Court concluded that the trial court had not abused its discretion in denying the motion for a new trial. *See id.*

Aside from his argument that the denial of the motion for a new trial was improper because the three-judge panel erred in deciding his motions to suppress, to dismiss, and for a *Franks* hearing, the petitioner does not otherwise set forth any basis for his contention that the denial of the motion for a new trial violated his right to fair trial. It appears clear that the petitioner's challenge to the denial of the motion for a new trial is based solely on the alleged improper denials of other motions by the three-judge panel.

The challenges to the rulings on the motions to suppress, to dismiss, and for a *Franks* hearing were addressed in prior sections of this ruling. Based on the court's evaluation of the petitioner's claims regarding the denial of various motions by the trial court as either barred from review or as involving a reasonable application of Supreme Court law and determination of the facts, the court cannot conclude that the Appellate Court's determination that the trial court did not abuse its discretion in denying the motion for a new trial is an unreasonable

-30-

application of Supreme Court law.  Thus, the claim that the trial court's denial of his motion for a new trial violated the petitioner's right to a fair trial is denied.

## V. <u>Conclusion</u>

The Petition for Writ of Habeas Corpus [**Doc. No. 1**] is **DENIED.**  The Clerk is directed to enter judgment in favor of the respondents and close this case.

The court concludes that petitioner has not shown that he was denied a constitutionally or federally protected right.  Thus, any appeal from this order would not be taken in good faith and a certificate of appealability will not issue.

SO ORDERED at Hartford, Connecticut this 14th day of April,2016.


___/s/___DJS_____

                    DOMINIC J. SQUATRITO
                    UNITED STATES DISTRICT JUDGE